FILED
2006 Sep-11  PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS WEST, an individual and on behalf of a class of similarly situated persons, firms, corporations, and/or legal entities,<br><br>Plaintiffs,<br><br>v.<br><br>NEOPOST INCORPORATED, et al.,<br><br>Defendants. | CV-06-BE-0161-S |

## MEMORANDUM OPINION

### I. INTRODUCTION

Currently pending before the court are the defendants Neopost Incorporated and Neopost Leasing, Incorporated's motion to dismiss the original complaint (doc. # 6) and motion to dismiss the first amended complaint (doc. # 11).  The amended complaint was filed without leave of court and in contravention of Fed. R. Civ. P. 15(a).  However, because the amended complaint includes more factual detail than the current complaint, the court construes the first amended complaint as a motion for leave to amend, and therefore, GRANTS the motion to amend[1] for purposes of judicial economy.  Given the court's acceptance of the amended complaint, the defendants' motion to dismiss the original complaint (doc. # 6) is MOOT.

After a thorough review of the motion within the lenient standard of review for motions

---

[1] Plaintiff's counsel does not need to re-file the amended complaint.

1

to dismiss, the court concludes that the motion to dismiss the amended complaint (doc. # 11) is due to be DENIED.

## II. DISCUSSION

When a federal court reviews the sufficiency of a complaint before the reception of any evidence, its task is necessarily a limited one. *Scheuer v. Rhodes*, 416 U.S. 232 (1974). The issue is not whether the plaintiffs will ultimately prevail but whether they are entitled to offer evidence supporting their claims. Courts follow the well-established rule that a complaint should not be dismissed under FED. R. CIV. P. 12(b)(6) unless it appears beyond a doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted); *See also, Toilet Goods Ass'n. v. Gardner*, 387 U.S. 167, 172 (1967). The issue is not whether the plaintiff will prevail, but whether he should have the opportunity to prove his claims. *Id.*[2]

The facts of this case are relatively straightforward. The Neopost defendants sell and lease postage meters to individual and corporate customers. In September 2003, West entered into a one-year lease agreement for the use of a Neopost IJ25 postage meter, paying the defendants $217.64.

The IJ25 requires the use of an ink cartridge, and the defendants, through their advertising, represented to plaintiff that the ink cartridge had a life of 2500 stampings. On or before August 15, 2004, the plaintiff's postage meter quit working and began displaying a

---

[2]In support of its motion to dismiss the amended complaint, the defendants filed a report by the United States General Accounting Office. *See* doc. # 11, *Ex*. A. The inclusion of this exhibit does not convert this motion into one for summary judgment because a court may take judicial notice of a public record. *See Davis v. Williams Commc'ns, Inc.*, 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279-80 (11th Cir. 1999)).

message that the ink cartridge was empty.  The meter displayed this message although plaintiff had used the machine for less than a year and had not exceeded the advertised 2500 stampings.

West attempted to purchase a replacement cartridge in the open market, but the defendants are the only entities that manufacture or distribute a replacement ink cartridge for the IJ25.  Consequently, on August 15, 2004, West was forced to pay $64.75 to purchase a replacement ink cartridge.

Less than a year later on April 20, 2005, with substantially less than 2500 stampings, the IJ25 again shut down and displayed a message that the ink cartridge was out of ink.  Upon receipt of this message, West removed the ink cartridge and discovered that, contrary to the display message, it contained ink.  Plaintiff was again forced to purchase another ink cartridge from the defendants for $70.15.

Counts I and II of the amended complaint allege that the defendants engaged in an illegal tying arrangement in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14.  West specifically alleges that "Defendants posses sufficient economic power and market share in the sale and rental of postage meters and replacement ink cartridges to coerce the forced purchase of ink cartridges."  Count III alleges that the defendants violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by including false/misleading descriptions of fact that misrepresent the nature of the life of the ink cartridge.

The motion to dismiss asks for the dismissal of the entire complaint.  The defendants first argue that the plaintiff has not alleged any factual basis for the legal conclusions contained in counts I & II.  Relying on the United States Supreme Court's recent holding in *Illinois Tool Works v. Independent Ink*, 126 S. Ct. 1281 (2006), the defendants contend that this court cannot

assume that Neopost has market power in a tying product without specific facts demonstrating market dominance.  Next, the defendants argue that count III does not state a cause of action under the Lanham Act because, as a consumer, West lacks standing to assert a false advertising claim.

  Notice pleading is all that is required for a valid antitrust claim in the Eleventh Circuit. *Quinonez v. Nat'l Assoc. of Securities Dealers, Inc.*, 540 F.2d 824 (5th Cir. 1976).  Notice pleading is a fairly liberal standard and only requires that the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.  Cursory allegations relating to alleged antitrust violations do not satisfy the notice pleading requirements; however, the alleged facts "need not be spelled out with exactitude, nor must recovery appear imminent." *United States v. Employing Plasters Assoc. of Chicago*, 347 U.S. 186, 189 (1954).  Notice pleading simply requires enough data so that each element of the alleged antitrust violation can be properly identified. *Quinonez*, 540 F.2d at 995.  Furthermore, and perhaps more importantly to the resolution of this case, dismissals are exceedingly disfavored in antitrust cases because of their fact-intensive nature. *Covad Communications Co. v. BellSouth Corp.,* 299 F.3d 1272, 1279 (11th Cir. 2002).

  In the Eleventh Circuit, "[t]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Tic-X-Press, Inc. v. Omni Promotions Co. of Ga.*, 815 F.2d 1407, 1414 (11th Cir. 1987) (quoting *Jefferson Parish Hosp. v. Hyde*, 466 U.S. 2, 12 (1984)).  "With these principles in mind, the courts have held that a plaintiff must establish the

following four elements to prove that a tying arrangement is illegal *per se*: (1) that there are two separate products, a 'tying' product and a 'tied' product; (2) that those products are in fact 'tied' together—that is, the buyer was forced to buy the tied product to get the tying product; (3) that the seller possess sufficient economic power in the tying product market to coerce buyer acceptance of the tied product; and (4) involvement of a 'not insubstantial amount of interstate commerce in the market of the tied product." *Tic-X-Press*, 815 F.2d at 1414.

At a minimum, enough facts can be deciphered from the complaint which, if accepted as true, satisfy the elements of an illegal tying arrangements under the Clayton and Sherman Acts. As a preliminary matter, the court distinguishes *Illinois Tool*, because the Supreme Court's holding in that case was based on an evidentiary deficiency at the *motion for summary judgment* stage. The court agrees with the defendants that, at the motion for summary judgment stage, the plaintiffs will have to present factual evidence of market dominance.

However, to survive a motion to dismiss, the amended complaint need only allege that the seller possess sufficient economic power in the tying product market to coerce buyer acceptance of the tied product. The amended complaint in this case tracks the statutory elements for a valid illegal tying arrangement, and thus, the court finds that it gives the defendants fair notice of the plaintiff's claim and the grounds upon which it rests.

Although the defendants are poised to make a contrary argument, the amended complaint puts the defendant on notice of West's assertion of its market dominance. The alleged details of Neopost's market dominance in the postal meter industry need not be spelled out with exactitude, nor must recovery appear imminent, as this level of factual detail is not required at the motion to dismiss stage. *See Employing Plasters Assoc.*, 347 U.S. at 189. Consequently, the defendants'

motion to dismiss is due to be DENIED on counts I and II of the amended complaint.

The issue of whether a consumer plaintiff has standing to sue under Section 43 of the Lanham Act is a more difficult one. In pertinent part, Section 43 of the Lanham Act provides a cause of action to "any person who believes that he or she is or is likely to be damaged" by a misrepresentation "in commercial advertising or promotion," of the "nature, characteristics, [or] qualities . . . of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125. Despite this seemingly expansive language, consumer actions under the Lanham Act have been consistently rejected, with several appellate courts holding that standing under the Act contemplates commercial competition.

Seven appellate courts hold that Section 45 bars a consumer from suing under the Lanham Act because that section explicitly provides that the Act is to protect persons engaged in congressionally regulated commerce against unfair competition. *See e.g.*, *Made in the USA Foundation v. Phillips Foods, Inc.*, 365 F.3d 278, 280-81 (4th Cir. 2004).[3] Based on this legislative expression of intention, these courts hold that consumer plaintiffs fall outside the range of reasonable interests protected by the statute.

However, the Eleventh Circuit has not addressed the issue. Neopost alleges that at least three district courts in the Eleventh Circuit have listed commercial competition between the

---

[3] Specifically, the Second, Third, Fourth, Fifth, Seventh, Ninth, and Tenth Circuits have so held. *See Colligan v. Activities Club of New York*, 442 F.2d 686, 692 (2d Cir. 1971); *See Jack Russell Terrier Network of Northern California v. American Kennel Club, Inc.*, 407 F.3d 1027, (9th Cir. 2005); *Made in the USA Foundation v. Phillips Foods, Inc.*, 365 F.3d 278, 280-81 (4th Cir. 2004); *Proctor & Gamble v. Amway Corp.*, 242 F.3d 539, 561 (5th Cir. 2001); *Conte Bros. Auto, Inc. v. Quaker State-Slick 50 Inc.*, 165 F.3d 221, 229 (3d Cir. 1998); *Stanfield v. Osborne Indus.*, 52 F.3d 867, 873 (10th Cir. 1995); *Serbin v. Ziebert Int'l Corp., Inc.*, 11 F.3d 1163, 1179 (3d Cir. 1992); *Dovenmuehle v. Gildorn Mortgage Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989); *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995).

plaintiff and the defendant as an essential element of a Lanham Act false advertising claim.[4] However, because neither of these district court cases involved a consumer plaintiff and are not binding on this court, they are of limited usefulness.

At this stage of the proceeding, the court cannot say that West would be unsuccessful in his efforts to demonstrate standing. For example, West argues that the appellate court decisions cited in the defendants' brief have improperly created restrictions that are not compelled by the plain language of the statute. According to the plaintiff, the words "civil action by any person" make it a proper plaintiff to sue Neopost for alleged false advertising regarding the longevity of its ink cartridges.

The court again emphasizes the limited nature of its inquiry at the motion to dismiss stage. The issue is not whether West will *succeed* in his attempts to convince this court to rule in contravention of the majority of the circuits that have addressed the issue, but whether the plaintiff should have the *opportunity* to establish his or her claims. Without binding authority from either the Supreme Court or the Eleventh Circuit that consumers do not have standing to assert false advertising Lanham Act claims, the court cannot conclude beyond a doubt that the plaintiff would not be entitled to relief. The ultimate issue of standing is one that is more appropriately raised on a motion for summary judgment. Consequently, the court concludes that the motion to dismiss is due to be DENIED on count III of the amended complaint.

### III. CONCLUSION

---

[4] *See Optimum Technologies, Inc. v. The Home Depot USA, Inc.*, 2005 WL 3307508, *5, *6 (N.D. Ga. 2005) ("communication must be… by a defendant in commercial competition with the plaintiff" and finding "no evidence that [defendant] is in commercial competition with [plaintiff]"); *Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals Inc.*, 391 F.Supp 2d 1148, 1164 (S.D.Fla. 2005); *BellSouth Adver. & Publ'g Corp. v. Lambert Publ'g*, 45 F.Supp. 2d 1316, 1323 (S.D.Ala. 1999).

Based on the foregoing, the defendants' motion to dismiss the amended complaint (doc. # 11) is due to be DENIED.  Furthermore, the motion to dismiss (doc. # 6) is MOOT.  The court will enter a separate order consistent with this memorandum opinion.

DONE and ORDERED this 11th day of September, 2006.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE