FILED
 2007 Jul-12  AM 08:51
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| THOMAS WEST, individually and on behalf of a class of similarly situated persons, firms, corporations, and/or legal entities, <br><br> Plaintiff, <br><br> v. <br><br> NEOPOST INCORPORATED and NEOPOST LEASING, INC., <br><br> Defendants. | CV-06-BE-161-S |

## MEMORANDUM OPINION

This case is before the court on Defendants' (collectively, "Neopost") Motion for Summary Judgment (Doc. 23) on all of Plaintiff Thomas West's claims included in his First Amended Complaint (Doc. 9). Plaintiff alleges (1) illegal tying arrangement in violation of the Sherman Act; (2) illegal tying arrangement in violation of the Clayton Act; and (3) false advertising in violation of the Lanham Act. Based on the undisputed facts, the court finds that Neopost is entitled to judgment as a matter of law. Accordingly, Defendants' Motion for Summary Judgment is GRANTED in its entirety.

## I. BACKGROUND[1]

Defendants sell and lease postage meters to individual and corporate customers. West entered into a lease agreement for the use of a Neopost IJ25 meter, which requires the use of an

---

[1] The court's recitation of the facts includes West's allegations and those facts that are undisputed. The undisputed facts alone are dispositive of the issues before the court; thus, because the disputed facts are immaterial to the court's disposition of the Motion before it, the court need not discuss them.

integrated ink cartridge. West alleges that Defendants, through their advertising, represented that the ink cartridge had a lifespan of 2500 stampings. According to West, however, his IJ25 meter has twice required replacement of the ink cartridge after far fewer stampings. West avers that Defendants are the only entities that manufacture or distribute replacement ink cartridges for the IJ25 meter.

Counts I and II of West's First Amended Complaint allege that Defendants engaged in an illegal tying arrangement in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14. Count III alleges that Defendants violated Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by including false/misleading descriptions of fact that misrepresent the nature of the life of the ink cartridge.

Neopost moved for summary judgment on Counts I and II because Defendants do not possess market power in a tying product. In support of their argument, Defendants present evidence that Neopost had a 5.3 percent market share in 1994 and continues to manufacture only small numbers of postage meters compared to Pitney Bowes,[2] which commands 80-90 percent of the market. West is not a commercial competitor with Neopost. West explicitly accepts these facts in his Response. (Pl.'s Resp. ¶ 1.) Defendants argue that they are entitled to summary judgment on Count III because West, as a consumer, has no standing to bring a claim under the Lanham Act.

## II. STANDARD OF REVIEW

---

[2] According to a letter prepared by Daniel J. Lord of the United States Postal Service, attached to Defendants' Motion as Exhibit 2, Pitney Bowes accounted for 1,311,395 postage meters in July 2005, while Neopost accounted for only 140,178 postage meters.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the court, by reference to materials on file that no genuine issues of material fact exist that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party may meet this burden by presenting evidence that demonstrates no genuine dispute of material fact or by showing that the non-movant's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. When the party moving for the summary judgment does not bear the burden of persuasion on the issue at trial, the moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.

### III.  DISCUSSION

A.  **TYING ARRANGEMENT**

Defendants argue that a plaintiff alleging an illegal tying arrangement must demonstrate that the defendant has market power. Accordingly, because West cannot show that Neopost has market power, Defendants urge that Counts I and II must be dismissed. (Def.'s Br. 7-8.) In response, West "does not dispute this statement of law as applied to *per se* antitrust violations," (Pl.'s Resp. ¶ 3), and agrees that Defendants "are entitled to summary judgment on plaintiff's claims that they have committed *per se* antitrust violations" (Pl.'s Resp. ¶ 6). On the other hand,

West argues, market power is not a prerequisite to success under the "rule of reason."[3]  (Pl.'s Resp. ¶ 6.)  Defendants reply that market power is required under both the *per se* analysis and the "rule of reason."  (Def.'s Reply 2-3.)

An illegal tying arrangement has four elements:  (1) two separate products (a tying and a tied product); (2) evidence of tying – that is, that in fact the buyer was forced to purchase the tied product to get the tying product; (3) that the seller has sufficient market power in the tying product market to force the buyer to accept the tied product; (4) "involvement of a 'not insubstantial' amount of interstate commerce in the market of the tied product."  *Tic-X-Press, Inc. v. Omni Promotions Co. of Ga.*, 815 F.2d 1407, 1414 (11th Cir. 1987) (citing *Amey*, 758 F.2d at 1502-03).

According to the Eleventh Circuit, the difference between *per se* violations and the "rule of reason" analysis is that the former does not require a showing of actual anticompetitive effects; the third element of market power remains a requirement under both *per se* analysis and the "rule of reason."  *Amey*, 758 F.2d at 1503.  This approach is generally accepted and consistent with several other circuits.  *See* 10 Phillip E. Areeda, Einer Elhauge & Herbert Hovenkamp, Antitrust Law ¶ 1760e3 (2005) (stating that "the *per se* rule against tying is '*per se*' in only one respect-- namely, dispensing with proof of anticompetitive effects"); *PSI Repair Servs., Inc. v. Honeywell, Inc.*, 104 F.3d 811, 815 n. 2 (6th Cir. 1997) (recognizing that, "in this circuit, market power in the

---

[3] "A *per se* rule is applied when 'the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output.'  *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 19-20, 99 S. Ct. 1551, 1562, 60 L.Ed.2d 1 (1979).  In such circumstances a restraint is presumed unreasonable without inquiry into the particular market context in which it is found."  *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 100 (1984).  Otherwise, the court must apply the "rule of reason," under which the trier of fact must analyze the actual anticompetitive effect of the challenged tying arrangement.  *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1503 (11th Cir. 1985).

tying product market is an indispensable requirement under either *per se* or rule-of-reason analysis"); *Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*, 73 F.3d 756, 761 (7th Cir. 1996) (noting that "substantial market power is an indispensable ingredient of every claim under the Rule of Reason"); *but see Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 484 (3d Cir. 1992) (refusing to require a market power showing under the "rule of reason").

The Eleventh Circuit's position is also supported by a recent Supreme Court decision on which Defendants' primarily rely.  In *Illinois Tool Works, Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 126 S. Ct. 1281 (2006), the Court vacated the longstanding presumption of market power for patented products.  Although West attempts to construe that holding as the full extent of *Illinois Tool Works*, the opinion was much broader.  In reviewing the Court's "substantially diminished" disapproval of tying arrangements, the unanimous Court[4] reaffirmed that the justification for challenges to tying arrangements always has been "the seller's exploitation of its *control* over the tying product to force the buyer into the purchase of a tied product."  *Ill. Tool Works*, 126 S. Ct. at 1286 (emphasis added).  Given this purpose and Congress's elimination of the patent-equals-market-power presumption in the patent misuse context, *see* 35 U.S.C. § 271(d)(5), the Court concluded "that tying arrangements involving patented products should be evaluated under the standards applied in cases like *Fortner II* and *Jefferson Parish* rather than under the *per se* rule applied in *Morton Salt* and *Loew's*."  *Ill. Tool Works*, 126 S. Ct. at 1291.  Then, in a sweeping conclusion, the Court held that, "in *all* cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product."  *Id.* at 1293 (emphasis added).

---

[4] Justice Alito took no part in consideration of the case.

Applying this holding to both patented and non-patented products fulfills Congress's purpose in prohibiting anticompetitive tying arrangements.

Under this controlling Eleventh Circuit and Supreme Court precedent, the court concludes that Plaintiff must prove market power to succeed on either a *per se* theory or under the "rule of reason." Yet, the parties do not dispute that Defendants occupy only a single-digit percentage of the postage meter market. Therefore, West cannot establish an essential element of his illegal tying arrangement claim. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 26-29 (1984) (indicating the market shares of 30 percent or less cannot, as a matter of law, demonstrate market power to support a tying claim), *abrogated on other grounds*, *Ill. Tool Works*, 547 U.S. 28. Therefore, Defendants' Motion for Summary Judgment as to Counts I and II is GRANTED.

### B. LANHAM ACT CLAIM

Defendants argue that the court should also dismiss West's false advertising claim because a consumer has no standing under the Lanham Act to bring an action for false advertising. (Def.'s Br. 8-13.) Neopost cites as support decisions from the Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, and Tenth Circuits. West asks the court to instead look at the plain language of the Lanham Act, which he argues confers standing on "any person." (Pl.'s Resp. ¶¶ 7-12.) He admits that almost every federal court has "pervert[ed]" the statute by holding that consumers lack standing. (Pl.'s Resp. ¶ 9.)

On June 22, 2007, the Eleventh Circuit joined the majority of other circuits. *See Phoenix of Broward, Inc. v. McDonald's Corp.*, — F.3d —, 2007 WL 1791886 (11th Cir. 2007). Although the Eleventh Circuit refused to adopt a strict requirement of "direct" competition in

favor of a more flexible five-part test for prudential standing,[5] the Court nonetheless confirmed that consumers do not have standing to bring a claim under the Lanham Act. *Id.* at *12 (stating that "consumers would not be able to vindicate the public interest via the Lanham Act, as 'the several circuits that have dealt with the question are uniform in their categorical denial of Lanham Act standing to consumers.'" (quoting *Made in the USA Found. v. Phillips Foods, Inc.*, 365 F.3d 278, 281 (4th Cir. 2004))). Moreover, consumers do not satisfy the first factor of the Eleventh Circuit's prudential standing test (*i.e.*, whether the injury is of the type that Congress sought to redress through the Lanham Act). According to the Court, "the focus of the [Lanham Act] is on anti-competitive conduct in a commercial context," and consumers possess no "competitive or commercial interests [that would be] affected by the defendant's conduct." *Id.* at *5.

The undisputed facts indicate that West is a consumer, not a competitor of Neopost. Plaintiff, therefore, does not have standing under section 45 of the Lanham Act, and Defendants' Motion for Summary Judgment as to Count III is hereby GRANTED.

## IV. CONCLUSION

Based upon the undisputed facts, Plaintiff cannot prove an essential element of his case under the Sherman Act and Clayton Act – specifically, that Defendants have market power – and Plaintiff does not have standing to bring an action under the Lanham Act. Therefore, Defendants

---

[5] The Court adopted the following five-factor test of the Third and Fifth Circuits:
 (1) The nature of the plaintiff's alleged injury: Is the injury of a type that Congress sought to redress in providing a private remedy for violations of the [Lanham Act]?
 (2) The directness or indirectness of the asserted injury.
 (3) The proximity or remoteness of the party to the alleged injurious conduct.
 (4) The speculativeness of the damages claim.
 (5) The risk of duplicative damages or complexity in apportioning damages.
*Phoenix of Broward*, 2007 WL at *6.

are entitled to judgment as a matter of law on all Counts of Plaintiff's First Amended Complaint. Accordingly, Defendants' Motion for Summary Judgment is hereby GRANTED. The court will enter a separate final order consistent with this Memorandum Opinion.

DONE and ORDERED this 11th day of July, 2007.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE